# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

# BECKLEY DIVISION

ERIC GARRETSON,

        Plaintiff,

v.                              CIVIL ACTION NO. 5:17-cv-04171

SENTRY CREDIT, INC., and
JH PORTFOLIO DEBT EQUITIES, LLC,

        Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed *Defendants' Sentry Credit, Inc. and JH Portfolio Debt Equities, LLC's Motion to Dismiss Plaintiff's First Amended Individual and Class Action Complaint* (Document 17), *Sentry Credit, Inc. and JH Portfolio Equities, LLC's Memorandum of Law in Support of Motion to Dismiss Plaintiff's First Amended Individual and Class Action Complaint* (Document 18), the *Plaintiff's Response in Opposition to Defendants' Motion to Dismiss First Amended Complaint* (Document 22), and *Defendants Sentry Credit, Inc.'s and JH Portfolio Debt Equities, LLC's Reply to Plaintiff's Response to Defendants' Motion to Dismiss* (Document 24). The Court has also reviewed the *Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss First Amended Complaint* (Document 27), the attached *Plaintiff's Surreply in Opposition to Defendants' Motion to Dismiss First Amended Complaint* (Document 27-1), and the *Plaintiff's First Amended Individual and Class Action Complaint* (Document 11), as well as all exhibits. For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

# FACTUAL ALLEGATIONS

The Plaintiff, Eric Garretson, seeks to bring this case against Defendants Sentry Credit, Inc. and JH Portfolio Debt Equities, LLC (JHP) on his own behalf and on behalf of a class of similarly situated West Virginia consumers. Synchrony Bank sold Mr. Garretson's credit card accounts to JHP after they were "charged off." (Am. Compl. at ¶ 12.) Sentry, on behalf of JHP, sent Mr. Garretson debt collection letters offering to settle the debt for less than the total amount due. Both letters are dated November 18, 2016. One lists an amount due of $3,877.61, consisting entirely of principal with no interest or other costs, and offers to settle for a lump sum of $2,326.57 or for three payments of $1,034.03 each. The other lists a balance of $1,462.74, also consisting entirely of principal with no interest or other costs, and offers to settle for a lump sum of $731.37 or for three payments of $341.31. Both letters invite the Plaintiff to "call today for flexible repayment terms." (Collection Letters, att'd as Ex. A to Pl.'s Am. Compl.) (Document 11-1.)

The letters contain the following language:

> If, as a result of the settlement, the amount forgiven or canceled on this debt equals or exceeds $600, the IRS may require the creditor to report the amount forgiven or canceled on a form 1099-C. You may receive this form for the year in which the settlement is completed. If you would like advice about the potential tax consequences that may result from this settlement, my client recommends that you consult a tax professional of your choosing. My client does not make any representations about the tax consequences that this settlement may have for you or any reporting requirement that may be imposed.

(*Id.*) Mr. Garretson alleges that this warning was purposely confusing and misleading because there was no requirement that Sentry or JHP issue a 1099-C for forgiven debt, and even if those regulations did apply, the warning did not accurately state the requirements of the regulations. He

further alleges that he was, in fact, confused by the 1099-C warning and "felt pressure to pay the whole debt rather than accept a settlement that may be reported to the IRS." (*Id.* at ¶ 25.)

The Plaintiff's amended complaint asserts the following causes of action: Count I – Fair Debt Collection Practices Act (FDCPA); Count II – West Virginia Consumer Credit Protection Act (WVCCPA); and Class Allegations. The Plaintiff seeks statutory and actual damages, as well as attorneys' fees and costs.

## STANDARD OF REVIEW

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint. *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008). "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint state a claim upon which relief can be granted.)" *Id*. Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In reviewing a motion to dismiss under Rule 12(b)(6) for failure to state a claim, the Court must "accept as true all of the factual allegations contained in the complaint." *Erikson v. Pardus*, 551 U.S. 89, 93 (2007). The Court must also "draw[ ] all reasonable factual inferences from those facts in the plaintiff's favor." *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999). However, statements of bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). Furthermore, the Court need not "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E.*

*Shore Mkts., v. J.D. Assocs. Ltd. P'ship,* 213 F.3d 175, 180 (4th Cir. 2000). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice… [because courts] 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Iqbal,* 556 U.S. at 678 (quoting *Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007)).

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 570.) In other words, this "plausibility standard requires a plaintiff to demonstrate more than 'a sheer possibility that a defendant has acted unlawfully.'" *Francis v. Giacomelli,* 588 F.3d 186, 193 (4th Cir. 2009) (quoting *Twombly,* 550 U.S. at 570.) In the complaint, a plaintiff must "articulate facts, when accepted as true, that 'show' that the plaintiff has stated a claim entitling him to relief." *Francis,* 588 F.3d at 193 (quoting *Twombly,* 550 U.S. at 557.) "Determining whether a complaint states [on its face] a plausible claim for relief [which can survive a motion to dismiss] will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal,* 556 U.S. at 679.

**DISCUSSION**

As an initial matter, the brief proposed sur-reply contains discussion of recently decided cases. The Court finds it appropriate to consider the sur-reply, and the motion for leave to file a sur-reply will therefore be granted.

The Defendants assert that this case must be dismissed because the 1099-C warning in the collection letters is not misleading or threatening, but is, in fact, an accurate, if abbreviated and generalized, statement of the law regarding discharged debt. They further note that "[r]egardless

of whether the creditor is required to report the discharge by way of a 1099-C, the debtor may be required to report the discharge as income." (Mem. in Supp. of Dismissal at 5.) The Defendants assert that there are no binding precedential decisions on the issue, but the courts that have considered similar language have found no violations where the language regarding tax consequences was conditional and accurate.

The Plaintiff argues that other courts have found similar statements warning of potential tax liability to constitute a violation of the FDCPA, and he asserts that the 1099-C warning violates analogous provisions of the WVCCPA as well. He also asserts that the letters falsely stated the entire alleged debt as principal, which renders the 1099-C warning particularly misleading, as the reporting requirements apply only to forgiveness of debt principal in excess of $600.[1] The Plaintiff argues that "introducing the IRS into the collection dialogue without making reasonably clear the contours of the agency's authority, is *per se* false, deceptive, and misleading from the perspective of the least sophisticated consumer." (Pl.'s Resp. at 16.)

In reply, the Defendants suggest that the conditional language stating that the creditor "may" be required to submit a 1099-C ensures that the statement is not misleading with regard to potential exceptions, including where the amount of discharged debt does not exceed $600 after consideration of non-reportable discharged interest. They further contest the Plaintiff's statement that a majority of courts to consider the issue have found that similar language potentially violates the FDCPA, asserting that a complete statistical analysis of cases is not possible. The Plaintiff filed a sur-reply outlining additional cases and furthering his arguments based on previously decided cases.

---

1 The amended complaint does not contain any allegations related to the veracity of the amount of the debt or the description of the entire debt as principal.

The FDCPA bars debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. 1692e. In the Fourth Circuit, "[w]hether a communication is false, misleading, or deceptive [under the FDCPA] is determined from the vantage of the 'least sophisticated consumer.'" *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 394 (4th Cir. 2014) (citing *United States v. Nat'l Fin. Servs., Inc.* 98 F.3d 131, 136 (4th Cir. 1996)). "The least-sophisticated-consumer test is an objective standard that evaluates § 1692e claims based upon how the least sophisticated consumer would interpret the allegedly offensive language." *Id.* at 394–95. The WVCCPA likewise bars debt collectors from using threats, coercion, oppression, abuse, or fraudulent, deceptive, or misleading representations as a means to collect or attempt to collect debts. W.Va. Code § 46A-2-124–127.

Both parties' briefs extensively discussed decisions from various district courts addressing similar language in debt collection letters, although there do not appear to be decisions from within the Fourth Circuit. Because the analysis in prior cases turned closely on the specific language and the facts alleged in those cases, those decisions provide limited assistance to the Court in analyzing the letters sent to the Plaintiff here. For example, one court found no violation where a letter offered to settle a $951.29 debt for $237.82, and warned the consumer that "IRS requires certain amounts that are discharged as a result of the cancellation of debt to be reported on a Form 1099-C. You will receive a copy of the Form 1099-C if one is required to be filed with the IRS." *Moses v. LTD Fin. Servs. I, Inc.*, 275 F. Supp. 3d 893, 894–95 (N.D. Ill. 2017). That court reasoned that it was possible, based on the information available to the debt collector, that a 1099-C would be required, and so "it was entirely prudent for [the debt collector] to alert [the plaintiff]

6

to the *possibility* that the discharged debt would be reported to the IRS." *Id.* at 897 (emphasis in original).

Another court considered a letter stating that "any indebtedness of $600.00 or more, which is discharged as a result of a settlement, may be reported to the IRS as taxable income…." *Balon v. Enhanced Recovery Co., Inc.*, 190 F. Supp. 3d 385, 387 (M.D. Pa. 2016). The settlement offer in that case reduced the total debt by $159.73. The court found that the warning was potentially misleading because (a) the reporting requirements could not apply to the proposed settlement offer and (b) the consumer could interpret the warning to suggest that reporting could or would be required because the total amount of the *debt* was greater than $600, although the amount of the proposed *debt forgiveness* was less than $600. The Court also reasoned that the use of conditional language was not sufficient to remedy the potential to deceive or mislead because the warning failed to communicate the existence of multiple exceptions to the reporting requirement.

Under the facts presented in the instant case, the Court finds that the challenged language is not misleading or deceptive. As in *Moses*, it appears that there was a possibility that reporting would be required if the Plaintiff accepted the offered settlement for a single, reduced lump sum payment as to either account. The language used in the 1099-C warning here is accurate and does not contain the potential to mislead that was present in *Balon*. The letters state that "[i]f as a result of this settlement, the amount forgiven or cancelled on this debt equals or exceeds $600, the IRS may require the creditor to report the amount forgiven or cancelled on a Form 1099-C." (Collection Letters.) The conditional language, as well as the subsequent sentences encouraging the recipient to contact a tax professional of his or her choosing and indicating that the creditor makes no representations about the tax consequences, serve to indicate that there may be

7

circumstances under which even a debt cancellation of $600 or more would not result in a 1099-C or potential tax liability. In short, the letters correctly put the borrower on notice that the creditor *might* be required to report the debt forgiveness to the IRS if the amount forgiven is $600 or greater.

The Court also finds the premise of the Plaintiff's argument regarding the misleading or coercive nature and intent of the 1099-C warning to be unconvincing. The Plaintiff suggests that the warning is intended to pressure the Plaintiff to pay the full amount of the debt to avoid any IRS involvement. However, the notice was included in a letter offering to settle the debt for a reduced amount. If the Defendants wanted to insist on full payment, they could insist on full payment without the rather convoluted approach of offering a settlement but coercing consumers to decline it by referencing the possibility that debt forgiveness could be taxable. It seems more likely that the Defendants included the 1099-C notice so that consumers would not be blindsided by receiving a 1099-C, and perhaps an unexpected tax bill. *See, e.g.*, *Landes v. Cavalry Portfolio Servs., LLC*, 774 F. Supp. 2d 800, 801 (E.D. Va. 2011) (dismissing a case with allegations that the *failure* to advise consumers of the potential tax consequences of accepting a partial discharge of debt constituted an FDCPA violation).

For the same reasons that the Court finds the motion to dismiss should be granted as to the FDCPA claim, the Court finds that the WVCCPA claim must also be dismissed. Although the legal standards are slightly different, the Plaintiff would need to demonstrate that the challenged 1099-C warning was misleading or deceptive to prevail under either statute. Because the Court has found that the language is not misleading or deceptive, the Defendants' motion to dismiss should be granted.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the *Plaintiff's Motion for Leave to File Surreply in Opposition to Defendants' Motion to Dismiss First Amended Complaint* (Document 27) be **GRANTED**. The Court further **ORDERS** that *Defendants' Sentry Credit, Inc. and JH Portfolio Debt Equities, LLC's Motion to Dismiss Plaintiff's First Amended Individual and Class Action Complaint* (Document 17) be **GRANTED.**

The Court **DIRECTS** the Clerk to send a certified copy of this Order to counsel of record and to any unrepresented party.

ENTER: April 3, 2018

*[signature]*
IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA